IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Jennifer Kiser, et al.,                                        Case No. 3:11CV1428

                Plaintiffs

      v.                                                            ORDER

CitiMortgage, Inc.,

                Defendant

      This is a suit by borrowers and former homeowners against their mortgage servicer, CitiMortgage, Inc., which foreclosed on the plaintiffs' home. On April 24, 2009, prior to the foreclosure, the bankruptcy court had discharged the plaintiffs from their obligations under the loan. They had, however, continued to reside in the residence.

      In November, 2010, a CitiMortgage representative had contacted plaintiffs about possibly modifying their mortgage under the federal Home Affordable Modification Program (HAMP). Obtaining a modification under HAMP required homeowner participants to participate in a Trial Period Plan (TPP). CitiMortgage sent plaintiffs a fax confirming their initial participation in such plan and detailing their duties. The parties thereon entered into a Service Participation Agreement (SPA).

Among plaintiffs' duties under the TPP and SPA were to make three reduced monthly payments of $723.04 and preparing and filling out and returning a financial information packet, which CitiMortgage was to send to them. Submitting that information was a prerequisite to consideration for a mortgage modification under HAMP. It appears from the complaint that CitiMortgage agreed, either expressly or implicitly, to provide and process the information packet during the initial three-month period.[1]

Beginning in November, 2010, plaintiffs began making the monthly payments. They continued to do so through December, 2010. In June, 2010, however, CitiMortgage instituted foreclosure proceedings.

By then, though plaintiffs had consistently made their monthly payments, CitiMortgage had yet to send the information packet, despite plaintiffs' repeated requests that it do so. They stopped payment on their June, 2010, check. CitiMortgage told them they did not qualify due to failure to return the information packet – which plaintiffs had never received from CitiMortgage.

In July, 2010, CitiMortgage reopened plaintiffs' case, had plaintiffs arrange for automatic deduction of their monthly payments and told them they were not in foreclosure and not to worry. At the end of July plaintiffs received the packet, which they completed and sent back to CitiMortgage on August 22, 2010.

CitiMortgage told plaintiffs they did not receive the packet. It sent a new packet to plaintiffs, who completed and returned it in September, 2010. Also that month plaintiffs received notice of a Sheriff's sale. CitiMortgage told plaintiffs it could halt the sale.

---

[1] Plaintiffs have, however, attached neither the original faxed commitment from CitiMortgage nor the SPA with their complaint. CitiMortgage likewise has not provided these documents. I discuss their putative terms only on the basis of the complaint's allegations.

In October, 2010 plaintiffs completed and sent a third information packet. In the meantime, plaintiffs' calls to CitiMortgage received no response. In November, 2010, CitiMortgage instructed plaintiffs to send a copy of the IRS Schedule C and information about their business account. They sent their Schedule C-EZ and notified CitiMortgage that they did not have a business account.

In January, 2011, after being told again that CitiMortgage did not have the requisite information packet, plaintiffs informed CitiMortgage that they no longer wanted to participate in the program due to their frustration with the process and distress over the continuing uncertainty about the fate of their home.

Plaintiffs stopped making payments and moved out of their home in February, 2011. After initially offering to accept a deed in lieu of foreclosure, CitiMortgage notified plaintiffs it could not do so unless the second lienholder released its interest. In the meantime, CitiMortgage also notified plaintiffs that it was rejecting their application for a modification because they had not submitted the necessary information packet. It then sent another letter telling them they did not qualify for a modification due to their income.

In this same time period, CitiMortgage had also notified credit reporting agencies that it had instituted the foreclosure proceedings.[2]

Enumerated by Count, the plaintiffs' causes of action are:

1. "General Allegations"

2. Breach of contract;

3. Fraudulent inducement to breach of contract;

---

[2] CitiMortgage's brief in support of it motion to dismiss states that plaintiffs defaulted in the foreclosure proceedings. That and other assertions not included within the four corners of plaintiffs' complaint are not properly before me.

4.      Promissory Estoppel (as an alternative to Counts 2 and 3);

5.      Violation of the federal Truth in Lending Act (TILA), 15 U.S.C. § 1601, *et seq.*;

6.      Fraud;

7.      Predatory lending/violation of truth in lending;

8.      Violation of federal Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.*;

9.      Defamation;

10.     False light;

11.     Violation of Ohio's Deceptive Trade Practices Act, O.R.C. § 4165 *et seq.*; and

12.     Violation of 11 U.S.C. § 524.

Defendant has filed a motion to dismiss all counts. (Doc. 4). For the reasons that follow, the motion shall be granted in part and denied in part.

## Discussion

### Count 2

### Breach of Contract

In essence, plaintiffs claim that CitiMortgage prevented them from qualifying for a mortgage modification because it deliberately delayed sending plaintiffs the information packet which they had to fill out and return as a prerequisite to consideration for a modification.[3]

CitiMortgage appears to view the gravamen of plaintiffs' breach of contract claim as a complaint that, in the end, they did not get a mortgage modification. I disagree: the breach of contract claim, as I read and understand the complaint, relates to CitiMortgage's failure to deliver

---

[3] The parties agree that the HAMP program does not provide for a private cause of action.

4

the information packet in a timely manner, and then, once the plaintiffs had returned the packet (and each time thereafter they did so), failing to process it to determine whether they qualified for a modification.

CitiMortgage also alleges that no contract was created. The complaint's allegations indicate otherwise: namely, that there was an agreement for plaintiffs to participate in the TPP. CitiMortgage had contacted them, offered to consider them for a mortgage modification and sent confirmation that they had agreed to participate in the TPP.

Under that agreement, plaintiffs were to make reduced monthly payments and submit information on forms which CitiMortgage was to provide. CitiMortgage, for its part, was to provide the forms and, on their return, determine whether plaintiffs qualified for a mortgage modification. This was to occur within the TPP three-month period.

Plaintiffs upheld their part of the bargain. CitiMortgage, according to the complaint, did not. CitiMortgage was to send them the information packet, but it did not do so for about eight months. Then it claimed never to have received plaintiffs' completed packet. Plaintiffs sent two more packets – which CitiMortgage also claimed never to have received. In the meantime, plaintiffs continued to make payments – albeit at an agreed reduced rate – on their mortgage even though the bankruptcy court had relieved them of their obligations under the underlying loan.

Whether plaintiffs thereby suffered damages, and if so, in what amount, is for a jury to decide. For now, all that matters, is that plaintiffs' complaint adequately sets forth a claim for breach of contract.

I overrule defendant's motion to dismiss Count 2.

5

**Count 3**

**Fraudulent Inducement
to Breach Contract**

Plaintiffs claim that CitiMortgage's assurances that they would qualify for a loan constituted fraudulent inducement to cause them to continue making their monthly payments, and, as well, have them finally decide to stop payments and offer a deed in lieu of foreclosure.

Defendant has addressed this claim in conjunction with its discussion of plaintiffs' sixth count, which alleges fraud. To the extent that the allegations supportive of plaintiffs' claim in this count mirror those in plaintiffs' fraud claim, they will be deemed incorporated into that claim.

With regard to the extent to which plaintiffs seek to recover on the basis that defendant's actions caused the plaintiffs themselves to breach their contractual obligations, this count shall be dismissed. Plaintiffs have not cited, and independent research has not uncovered an Ohio case in which a party has prevailed on a contention that a defendant's fraudulent conduct caused the party to default on its obligations to the defendant.

Such contention might be a defense to a defrauding plaintiff's claim against a defrauded party. But that is not what plaintiffs are asserting here.

Count 3, which, insofar as I can tell, seeks to assert a non-existent cause of action, shall be dismissed.

**Count 4**

**Promissory Estoppel**

Plaintiffs' complaint alleges that CitiMortgage promised it would provide a mortgage modification and they should not worry about the foreclosure proceedings, and that such promises caused them to continue making monthly payments for longer than they otherwise would have.

6

Specifically, plaintiffs' allegations are:

- In April, 2010, "[b]ased on Defendant's representation that they would qualify for a mortgage modification under HAMP, Plaintiffs performed home repairs . . . ." (¶ 17);

- "In or about July, 2010, Defendant contacts Plaintiffs and informs them they are not in foreclosure and to not worry." (¶ 21);

- "In or about August, 2010, Defendant contacts Plaintiffs several times to discuss their intention with the home and reassure the Plaintiffs about their high likelihood of qualifying for a mortgage modification. Meanwhile, Defendant filed a Motion for Default Judgment . . . . and received a judgment entry to that effect on August 18, 2010. Plaintiffs are told by Defendant that the foreclosure action is just a required procedure for the mortgage modification." (¶ 23);

- "In or about September, 2010, Plaintiffs received a notice of Sheriff's sale . . . . Kenneth Medley, an employee of Defendant's Outreach program, tells the Plaintiffs that he can halt the Sheriff sale but they are to not contact their account representative regarding the matter." (¶¶ 24, 25);

In addition, plaintiffs' opposition brief appears to contend that their original SPA with CitiMortgage created a contract to modify their mortgage.

A claim of promissory estoppel involves

(1) a clear and unambiguous promise, (2) reliance by the party to whom the promise was made, (3) the reliance is reasonable and foreseeable, and (4) the party relying on the promise must have been injured by the reliance.

*Patrick v. Painesville Commercial Properties, Inc*., 123 Ohio App.3d 575, 583 (1997).

Statements of prediction or opinion as to what the future will bring – as opposed to statements affirming a past or present fact – do not give rise to a claim of promissory estoppel. *See, e.g., Association for Responsible Development v. Fieldstone Ltd. Partnership*, 1998 WL 785330, *9 (Ohio App.) ("predictions or opinions concerning . . . future conduct . . . were insufficient to convey a clear and unequivocal promise" and thus failed to state a cause of action for promissory estoppel).

7

With regard to plaintiffs' claim that the SPA embodied a promise that they would receive a mortgage modification, plaintiffs neither cite nor quote provisions in that document supporting their contention. Their pleading as to the sequence by which they sought to apply for a modification belies their contention that CitiMortgage committed itself at the outset to a modification.

Plaintiffs' factual allegations that they first had to start regular payments *and* submit supporting documentation to enable CitiMortgage to evaluate their financial status belie any claim that modification was assured.[4] The SPA cannot, therefore, be interpreted as expressing a promise that a loan modification would occur.

Likewise, the periodic reassuring statements about the likelihood of loan modification, made, albeit, as progress was not occurring as months went by, were not statements of fact. They were simply predictions as to future events.

Moreover, despite their conclusory assertion that they reasonably relied on the putative promises about ultimate success, plaintiffs' factual allegations in that regard fail to show that their reliance was reasonable. *See Adams v. J.P. Morgan Chase Bank*, 2011 WL 2532925, *3 (N.D. Ga.) (promise to evaluate a borrower's application for a loan modification insufficient to justify reliance).

Even if, had that assurance been given at the outset, plaintiffs' reliance could have been reasonable, by the time CitiMortgage made those statements, reliance was not reasonable.

CitiMortgage made the first such "promise" in April, 2010. By then the information packet, which was a precondition to any mortgage modification, had not come. Moreover, the three-month

---

[4] No mortgage lender or servicer would allow bankrupts simply to resume payments and deem such to entitle them to permanent modification of the terms and conditions of their obligations under the mortgage. To the extent that plaintiffs implicitly assert to the contrary, their contention does not pass the *Iqbal/Twombly* plausibility standard. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007).

8

termination date for the TPP (and a decision on modification) had passed. CitiMortgage's complete inaction *vis-a-vis* gathering *sine qua non* information made plaintiffs' continued reliance unreasonable.

Had there been some indication of a waiver of that requirement, things might have been different. But there was nothing of the sort.

The situation did not improve as time passed. Thus, regardless of when and how often CitiMortgage representatives reassured the plaintiffs about a successful outcome, the manifest lack of tangible progress to that end undercut any reasonableness of plaintiffs' reliance. Even if they in fact relied on what CitiMortgage was telling them, doing so was not reasonable.

The statements that in or about July, 2010, defendant contacted plaintiffs and told them "they are not in foreclosure" and the statement by defendant's employee Kenneth Medley, "that he can halt the Sheriff's sale. . . ." are, however, different.

Those were "clear and unambiguous" statements of present fact. They implicitly, but clearly and unambiguously assured plaintiffs that no harm would come to them if they took no action *vis-a-vis* the foreclosure and even the ensuing Sheriff's sale. In light of the additional statement, "the foreclosure action is just a required procedure for the mortgage modification," a jury could find that any resulting reliance on the promises that they were not in foreclosure and the Sheriff's sale could be halted was reasonable.

As to damages, a jury might find that the plaintiffs spent money they otherwise would not have spent; namely the difference between their continuing monthly payments and the property's fair market rental value. In addition, and more importantly, the instruction not to contact the account representative could reasonably have deterred plaintiffs from seeking not just information from that

9

source, but legal advice as well. Which, in turn, left the default in place and led or, at a minimum, contributed to the loss of plaintiffs' home.

Thus, I find that plaintiffs have stated a cause of action for promissory estoppel with regard to the statements that plaintiffs were not in foreclosure and that CitiMortgage could halt the Sheriff's sale.

## Counts 5, 7

## Truth in Lending Act;
## Predatory Lending

Plaintiffs' opposition concedes that the defendant's arguments in support of dismissal of the Truth in Lending Act claim are well-taken. Accordingly, I dismiss this claim.

It appears that the allegations in Count 7, asserting predatory lending practices, also derive from TILA. I dismiss that count as well.

## Count 6

## Fraud

The factual allegations relating to plaintiffs' fraud claim are essentially those on which they base their promissory estoppel claim: namely, the representations about plaintiffs' high likelihood of qualifying for a mortgage modification and with regard to the foreclosure and Sheriff's sale.

The elements of civil fraud are:

(a) a representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance.

*Burr v. Stark County Bd. of Commrs*., 23 Ohio St. 3d 69, 73 (1986) (citations omitted).

10

A plaintiff must plead fraud with particularity. Fed. R. Civ. P. 9(b). At a minimum, this requires a plaintif to "allege the time, place, and content of the alleged misrepresentations on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *U.S. ex rel. Bledsoe v. Cmty. Health Sys., Inc*., 501 F.3d 493, 504 (6th Cir. 2007) (quoting *Coffey v. Foamex L.P.*, 2 F.3d 157, 161-62 (6th Cir. 1993) (internal quotation marks and citations omitted)); *see also Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, *680 (6th Cir. 1988) (finding fraud count sufficient under Rule 9(b)).

In addition, the allegedly fraudulent statement must be one of fact, not an opinion or prediction of what might come to pass. *See, e.g., Wells Fargo Bank, N.A. v. Sessley*, 188 Ohio App.3d 213, 231 (2010) (finding a bank representative's statement that borrowers could refinance in two years a prediction, rather than statement of fact).

Thus, as with plaintiffs' claim of promissory estoppel, statements about getting the modification were predictions, not statements of fact. They are not actionable in fraud.

The statements, about not being in foreclosure, "the foreclosure action is just a required procedure for the mortgage modification" and, by Kenneth Medley, "that he can halt the Sheriff's sale. . . ." are, however, different. They are clear assertions, manifestly intended to cause plaintiffs to rely on what was being said. If not truthful, as they appear not to have been, a jury could find they were made with an intent to deceive or, at a minimum, recklessly.

Contrary to defendant's contention, a jury could find that the plaintiffs' reliance was reasonable.

To be sure, only as to Medley's statement do the plaintiffs specify the speaker. Normally lack of specification as to the statements about the foreclosure action  might eliminate that as a basis for

11

a fraud claim. But I decline, *via* dismissal, to preclude the plaintiffs' ability to discover the particular speakers of those statements and their status at this stage.

I find that otherwise plaintiffs plead the fraud count with adequate specificity. In any event, it is highly unlikely that CitiMortgage does not have a comprehensive file relative to plaintiff's application for a HAMP modification.

If that is so, I decline to apply Rule 9(b) with dogmatic rigidity and severity in favor of a sophisticated mortgage servicer and against unsophisticated parties.[5] CitiMortgage's review of its own file can fill in whatever blanks it believes really are missing – or plaintiffs can do so once it obtains the file and conducts appropriate further discovery.[6]

In its initial brief, defendant claimed the statute of frauds, O.R.C. § 1335.05 precludes plaintiffs' fraud claim. In pertinent part, the provision states that no contract relating to real estate, if "not to be performed within one year from the making thereof" is enforceable "unless the agreement upon which such action is brought, or some memorandum or note thereof, is in writing

---

[5] The plaintiffs' assertions, if true, about the entire course of events indicate they were seeking to deal with CitiMortgage in good faith, while the defendant appears not to have been reciprocating. This is another reason not to over-favor the bank at this initial stage of this lawsuit.

[6] At this point, it appears appropriate for CitiMortgage to deliver the entire file and any other materials relating to plaintiffs to their attorney as discovery begins. If the file discloses information supportive of plaintiffs' claims of promissory estoppel and/or fraud, they may seek leave either to revive the dismissed portions or otherwise expand those claims. Under all the circumstances alleged in the complaint, it would not be appropriate to permit defendant to redact anything from the plaintiffs' HAMP/TPP/loan modification, etc., file. If defendant has a substantial basis for not producing some portion of these materials, it can, of course, raise and be heard on its opposition to these comments. For now, it suffices to express my expectation, without formally ruling on a dispute yet to arise.

12

and signed by the party to be charged therewith. . . ." As described by the parties in their briefs, the TPP and SPA were to be performed within three months.[7]

In its reply brief CitiMortgage changes tack. It cites O.R.C. § 1335.02(B), which provides: "No party to a loan agreement may bring an action on a loan agreement unless the agreement is in writing and is signed by the party against whom the action is brought or by the authorized representative of the party against whom the action is brought." The TPP and SPA were not "loan agreements." They were, as I understand them from the parties' references in their briefs, agreements whereby Citibank, if plaintiffs resumed payments and submitted required financial information, would consider whether to modify their mortgage. As I previously have indicated, those agreements could not have bound CitiMortgage to modify the mortgage.

That being so, § 1335.02(B) is not applicable. Ohio's statute of frauds is not a barrier to the fraud claim.

### Count 8

### Fair Credit Reporting Act

Plaintiffs claim CitiMortgage violated the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* (FCRA) by providing false information to credit reporting agencies with regard to their home being in foreclosure and plaintiffs being delinquent in their payments. They have not alleged that credit reporting agencies notified CitiMortgage the plaintiffs were disputing the information CitiMortgage provided to the reporting agencies.

---

[7] Once again, I note how the parties' mutual failure to attach the pertinent document(s) to either the complaint, motion or briefs impairs my full assessment of the arguments.

13

This claim must be dismissed. As stated in *Wielicki v. HMC Group*, 2009 WL 2496642, *5

(N.D. Ohio) (citations omitted):

> [T]he statute does not create a private right of action for violations of Section
> 1681s-2(a).
>
>    Courts have found that "a consumer may recover damages for a willful violation
> of 15 U.S.C. § 1681s-2(b)," which concerns the duties of furnishers of credit
> information upon notice of a dispute. However, to establish a violation of Section
> 1681s-2(b)(1), "the plaintiff must show that the furnisher received notice from a
> consumer reporting agency, not the plaintiff, that the information is disputed." Where
> the plaintiff does not show that a dispute has been filed with a credit reporting
> agency, there is no claim under this section of the FCRA.

Plaintiffs' FCRA claim is dismissed.

## Counts 9, 10

## Defamation

Plaintiffs have not responded to CitiMortgage's contention that § 1681t(b)(1)(F) of FCRA

preempts these state law claims. In any event, defendant's contention is well-taken. *See, e.g., Brown*

*v. Sterling Infosystems, Inc.*, 2010 WL 3057844, *4 (N.D. Ohio).

These counts are dismissed.

## Count 11

## Ohio Deceptive Trade Practices Act

Plaintiffs concede that this count fails to state a cause of action because plaintiffs lack

standing under Ohio's Deceptive Trade Practices Act, O.R.C. § 4165 *et seq*. It is, accordingly,

dismissed.

## Count 12

## 11 U.S.C. § 524

14

Plaintiffs request, *inter alia*, that this count be dismissed without prejudice. I grant that request.

### Conclusion

For the foregoing reasons, it is hereby

ORDERED THAT the defendant's motion to dismiss (Doc. 4) be, and the same hereby is granted (with Count 12 being dismissed without prejudice), except, to the extent stated herein, with regard to plaintiffs' claims for breach of contract (Count 2), promissory estoppel (Count 4) and fraud (Count 6).

A status/scheduling conference is set for October 14, 2011 at 11:00 a.m.

So ordered.

/s/ James G. Carr
Sr. United States District Judge

15